UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENIL SHETH,<br><br>    **Plaintiff,**<br>v.<br><br>ARTECH LLC AND VERIZON COMMUNICATIONS, INC.,<br><br>    **Defendants.** | Civ. No. 2:25-cv-1205 (WJM)<br><br>**OPINION** |

In this employment discrimination action, Defendant Artech LLC ("Artech") and Verizon Communications, Inc. ("Verizon") (together "Defendants") move to compel arbitration pursuant to 9 U.S.C. § 4 and to stay this action pending outcome of the arbitration pursuant to 9 U.S.C. § 3. ECF No. 5. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Defendants' motion to compel arbitration is **denied** as to Verizon and **granted** as to Artech. Defendants' request to stay this action pending resolution of the arbitration is **granted**.

I.   BACKGROUND

Artech is a full-service staffing firm. Defs. Statement of Facts, ¶ 1, ECF No. 5-1. Verizon is a telecommunications company that contracted with Artech in its search for a temporary contractor to serve as "Project Manager – III." *Id.* at ¶ 3. Plaintiff interviewed with Verizon and was notified on March 31, 2021 by Artech that he had been selected by Verizon for the position of "Technical Project Manager - III." *See* Mot. to Compel, Ex. D. On April 7, 2021, Plaintiff signed an Employment Agreement with Artech indicating that Plaintiff was hired by Artech as "Project Manager – III" starting on April 12, 2021 and that he was required to perform "specialized work" for Artech's "Client." *See id.* at Ex. A at ¶ 1, ECF No. 5-2. Plaintiff acknowledged and agreed that he was "not an employee of any Client" and that he was hired as a "Consultant/Contractor" for a "client engagement or for a specific project or task, of limited duration." *Id.* at ¶¶ 4, 13. While Plaintiff's wages would be paid by Artech, Plaintiff was to work at the Client's site, the same hours as Client's employees, and "adhere to all applicable policies, procedures and rules of both Employer and Client." *Id.* at ¶ 11. The parties also agreed to an arbitration provision stating in pertinent part:

> … Employee explicitly agrees that any dispute in any matter related to Employee's employment with ARTECH, which the parties are unable to resolve through direct discussion, regardless of the kind or type of dispute

1

(excluding claims for unemployment insurance, worker's compensation, or any matter within the jurisdiction of the Labor Commissioner), shall be exclusively subject to final and binding arbitration pursuant to the provisions of New Jersey Permanent Statutes section 2A:24-1, et seq. .... Such arbitration shall be held in Morristown, New Jersey.

EMPLOYEE AGREES AND UNDERSTAND THAT BY AGREEING TO THIS BINDING ARBITRATION PROVISION, EMPLOYEE VOLUNTARY SURRENDER THEIR RIGHTS TO CIVIL LITIGATION, A TRIAL BY JURY AND ANY ASSOCIATED RIGHTS OF APPEAL.

*Id.* at ¶ 19 ("Arbitration Clause").

Plaintiff went on paternity leave on May 6, 2024. Compl., ¶ 48. On June 11, 2024, Artech advised Plaintiff that his employment with Verizon had been terminated. *Id.* at ¶ 52. Subsequently, Plaintiff filed suit on January 9, 2025 in state court against both Artech and Verizon under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(A)(1) and the New Jersey Family Leave Act ("NJFLA"), N.J.S.A. § 34:11B-9, alleging discriminatory termination as well as retaliation and interference with his right to take paternity leave. After removing this action from state court, Defendants now move to compel arbitration pursuant to the Arbitration Clause and to stay this action pending resolution of the arbitration.

## II. DISCUSSION

### A. Motion to Compel Arbitration[1]

The Federal Arbitration Act (FAA) evidences a "'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). A court is required to order that the parties proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). The "party resisting arbitration bears the burden of proving that

---

[1] The parties cite to New Jersey state or federal caselaw within this Circuit. Thus, the Court will do likewise. *See Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014).

2

the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

1. <u>Applicable Standard</u>

When it is clear from the face of the complaint that the claims at issue are subject to an enforceable arbitration provision, then "a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citation and internal quotes omitted)). In contrast, if arbitrability is unclear on the face of the complaint or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, a summary judgment standard applies and the motion to compel must be denied pending limited discovery on the issue of arbitrability. *Id.* (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). The parties agree that the Court should apply a summary judgment standard. *See* Def. Mot. at 6; Pl. Opp. at 1-3.

Under the summary judgment standard, a court may allow discovery if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *Dowling v. City of Philadelphia*, 855 F.2d 136, 140–41 (3d Cir.1988) ("a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained."). In this case, Plaintiff states that he did not knowingly assent to arbitrate any claims against Verizon but fails to provide an affidavit to support that contention or specify what information he seeks from limited discovery. Absent a "factual dispute, there is nothing to discover and thus no need to delay a decision on the motion to compel." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319-20 (3d Cir. 2024) (citing *Guidotti* 716 F.3d at 767, 780 (noting genuine dispute of material facts as to whether customer received agreement such that meeting of minds occurred on agreement to arbitrate)). Discovery is not necessary to decide the pending motions.

2. <u>Whether Parties Agreed to Arbitrate</u>

To decide whether the parties have agreed to arbitrate any disputes, generally courts apply "ordinary state-law principles that govern the formation of contracts." *In re Remicade*, 938 F.3d at 524 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Plaintiff maintains that there was no mutual assent because the arbitration agreement does not indicate the forum for arbitration or who would bear the cost of arbitration. The Court disagrees that those are sufficient to demonstrate a lack of mutual assent.

3

First, "the parties' omission of a designated arbitral institution or general process for selecting an arbitration mechanism or setting ... [does] not warrant the invalidation of an arbitration agreement. Parties who have expressed mutual assent to the arbitration of their disputes instead of a court proceeding may choose to defer the choice of an arbitrator to a later stage, when they will be in a position to assess the scope and subject of the dispute, the complexity of the proposed arbitration, and considerations of timing and cost." *Flanzman v. Jenny Craig, Inc.*, 244 N.J. 119, 140-41 (2020)); *see e.g., Robbins v. Playhouse Lounge*, No. 19-08387, 2021 WL 2525709, at *12 (D.N.J. June 21, 2021). Notably, "New Jersey law, through the New Jersey Arbitration Act, explicitly provides default provisions for the selection of an arbitrator, which 'may operate in the absence of contractual terms prescribing such procedures." *Robbins v. Playhouse Lounge*, No. 19-08387, 2021 WL 2525709, at *11 (D.N.J. June 21, 2021) (citing *Flanzman*, 244 N.J. at 139). "Those provisions, found at N.J.S.A. 2A:23B-11-15, provide a mechanism for the selection of an arbitrator that can fill the gaps found in an arbitration agreement." *Id.*

Second, Defendants have advised that they will pay all of the arbitrator's fees and expenses. *See* Defs.' Mot. at 5. Thus, Plaintiff cannot argue that he bears even the speculative risk of incurring substantial arbitration costs. *See Green Tree Fin. Corp.*, 531 U.S. 79. The Arbitration Clause's silence as to who bears the cost of arbitration is alone "plainly insufficient to render it unenforceable." *See id.*

Finally, Plaintiff merely notes in passing that the Arbitration Clause does not highlight the difference between arbitration and litigation. However, the Arbitration Clause expressly and clearly states that "EMPLOYEE AGREES AND UNDERSTAND[S] THAT ... EMPLOYEE VOLUNTARY SURRENDER THEIR REIGHTS TO CIVIL LITIGATION, A TRIAL BY JURY AND ANY ASSOCIATED RIGHTS OF APPEAL." "'When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected.'" *GAR Disability Advocs., LLC v. Taylor*, 365 F. Supp. 3d 522, 527 (D.N.J. 2019) (citing *Stelluti v. Casapenn Enters., LLC*, 203 N.J. 286 (2010)). There is no allegation of fraud here. The agreement to arbitrate is valid and enforceable.

### 3. Whether Verizon Can Enforce Arbitration Clause

To the extent the arbitration agreement is valid and enforceable, Plaintiff claims that he did not knowingly waive his right to a jury trial for any disputes with Verizon because Verizon is not mentioned by name in the arbitration agreement and is not a signatory to the agreement. Defendants posit that Verizon can enforce the Agreement as a third-party beneficiary. Indeed, arbitration agreements may bind non-signatories when "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal quotation marks omitted).

a. *Third-Party Beneficiary*

"[W]hether seeking to avoid or compel arbitration, a third party beneficiary has been bound by contract terms where its claim arises out of the underlying contract to which it was an intended third party beneficiary." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187, 195 (3d Cir. 2001). To "determine[] the existence of 'third-party beneficiary' status, the inquiry 'focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement.'" *Ross v. Lowitz,* 222 N.J. 494, 513 (2015) (citing *Broadway Maint. Corp. v. Rutgers,* 90 N.J. 253, 259 (1982)). The intent of the parties is derived "'from an examination of the contract and a consideration of the circumstances attendant to its execution.'" *Mut. Ben. Life Ins. Co. v. Zimmerman,* 783 F. Supp. 853, 866–67 (D.N.J.), *aff'd,* 970 F.2d 899 (3d Cir. 1992) (citing *Rieder Communities, Inc. v. Twn. Of North Brunswick,* 227 N.J. Super. 214, 222 (App. Div. 1988)).

Although Verizon is not explicitly named in the Employment Agreement, it is clearly an Artech "Client." However, no language or other evidence demonstrates that Verizon is an intended rather than incidental third-party beneficiary. *See Wafula v. Artech Info. Sys., LLC,* No. A-1160-20, 2022 WL 17366274 (N.J. Super. Ct. App. Div. Dec. 2, 2022).[2] In *Wafula,* the plaintiff signed an employment agreement with defendant staffing agency Artech Information Systems, LLC (AIS), in which she agreed to work for AIS's "Client" and comply with the policies, procedures, rules, and directions of any client AIS assigned to her. *Id.* at *1. That employment agreement contained an arbitration clause, the relevant portions of which are identical to the one at issue. After being terminated by Sandoz where AIS assigned her to work, the plaintiff sued AIS and Sandoz for violation of state discrimination law. Although Sandoz was not a signatory to the employment agreement, it moved to compel arbitration arguing that it had "significant control" over "virtually every aspect of" the plaintiff's assignment pursuant to the terms of the employment agreement. *Id.* at *2. Nonetheless, the trial court denied the motion to compel finding that the record did not show that the plaintiff intended to confer a "significant and direct" benefit to Sandoz. *Id.* The Appellate Division affirmed.

As in *Wafula,* the Employment Agreement here contains terms and conditions directed by or subject to review by Artech and/or the Client but makes clear that Plaintiff is "not an employee of any Client." Employment Agreement, ¶ 4. *See also e.g., Diomande v. Toyota Motor Mfg., Kentucky, Inc.,* No. 14-171, 2015 WL 1468091, at *4 (E.D. Ky. Mar. 30, 2015) (concluding that client of staffing agency was not third-party beneficiary of employment contract between staffing agency and employee noting staffing agency's

---

[2] While unpublished state court decisions are non-binding and New Jersey state court decisions should generally not be cited, *see* N.J. Court Rule 1:36-3, the court "may consider unpublished state court opinions as persuasive authority 'when predicting state law.'" *Noye v. Johnson & Johnson Servs., Inc.,* 765 F. App'x 742, 747 n.8 (3d Cir. 2019) (citing *Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.,* 760 F.3d 307, 317 n.9 (3d Cir. 2014)).

efforts "to draw a distinction between itself, as [plaintiff's] employer, and its client."). Moreover, the wording of the Arbitration Clause to arbitrate "any dispute in any matter related to Employee's employment with ARTECH" is silent as to Artech's clients. *Compare with, e.g., Dunkley v. Mellon Investor Servs.*, No. 06-3501, 2007 WL 3025730, at *1, n.2 (D.N.J. Oct. 15, 2007) (finding that non-signatory client of staffing agency was intended third-party beneficiary of arbitration agreement between employee and staffing agency where parties agreed to arbitrate "[a]ny disputes arising out of or relating to the actions of Volt [the staffing agency] or any assignment or termination of any assignment, *including disputes arising out of or related to the actions of Volt's customers (or customer's employees)*." (emphasis added)).

Finally, Verizon and Artech are sophisticated commercial entities and if Verizon was intended to be covered by the Arbitration Clause, that "could have easily been accomplished with additional direct and express language as contemplated and required by our caselaw when an individual is giving up certain rights with respect to dispute resolution." *Wafula*, 2022 WL 17366274, at *2. In sum, there is no evidence to indicate that Verizon was an intended third-party beneficiary.

### b. *Equitable Estoppel*

Under equitable estoppel, "courts have bound a signatory to arbitrate with a non-signatory" where there is a "'close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract ... and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.'" *E.I. DuPont de Nemours & Co.*, 269 F.3d at 199 (citing *Thomson–CSF, S.A. v. American Arbitration Assoc.*, 64 F.3d 773, 779 (2d Cir. 1995)). Defendants' reliance on *Egan v. Regeneron Pharms. Inc.*, No. 22-CV-1981, 2023 WL 1997444, at *5 (D.N.J. Feb. 10, 2023) is unavailing. There, the court held that non-signatory defendant, Regeneron, could enforce the arbitration agreement between the plaintiff and her employer, MMI, a staffing agency based on Regeneron's "close relationship" between it and MMI as alleged "joint employers." The "close relationship" is based on equitable estoppel principles, which do not apply to the case at bar because Defendants have not shown detrimental reliance. *See Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174, 193 (2013) ("Estoppel cannot be applied solely because the parties and claims are intertwined ... Further, the doctrine of equitable estoppel does not apply absent proof that a party detrimentally rely on another party's conduct."). Thus, Defendant's motion to compel arbitration is **denied** as to Verizon.

### 4. Scope of Arbitration Agreement

Inasmuch as "federal law applies to the interpretation of arbitration agreements," once a court has found that there is a valid agreement to arbitrate, regardless of whether the action is in a federal or a state court the determination of whether "a particular dispute

6

is within the class of those disputes governed by the arbitration clause ... is a matter of federal law." *Century Indem. Co.*, 584 F.3d at 524 (citing *China Minmetals Materials Import and Export Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003)).

The Arbitration Clause provides for arbitration of "any dispute in any matter related to Employee's employment with ARTECH ... regardless of the kind or type of dispute" excluding specific claims not at issue here. As explained by the Third Circuit, "New Jersey '[c]ourts have generally read the terms 'arising out of' or 'relating to' [in] a contract as indicative of an 'extremely broad' agreement to arbitrate any dispute relating *in any way* to the contract.'" *In re Remicade*, 938 F.3d at 523 (emphasis added) (citing *Curtis v. Cellco P'ship*, 413 N.J. Super. 26 (App. Div. 2010)). Where the arbitration clause at issue is broad, the presumption of arbitrability is particularly applicable. *Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000). Moreover, Plaintiff has not specifically disputed Defendants' assertion that statutory claims fall within the scope of the arbitration agreement. *See Zeller-Landau v. Sterne Agee CRT, LLC*, No. 17-3962, 2018 WL 334970, at *5 (E.D. Pa. Jan. 9, 2018) ("Courts within the Third Circuit have held that broad arbitration clauses in employment agreements encompass statutory claims."); *see e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (affirming that agreement to arbitrate "any dispute, claim or controversy" subjected statutory Age Discrimination and Employment Act claim to arbitration). Accordingly, Defendant's motion to compel arbitration is **granted** as to Artech.

B. Motion for Stay

Section 3 of the FAA provides in pertinent part that where there is a written arbitration agreement, the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). Under this express language, a court has "no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) (holding district court was obligated to grant stay once it decided to order arbitration). That plain statutory text requires a court to stay the proceeding as to claims against Artech. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024).

In contrast, a mandatory stay is inapplicable to the claims against Verizon. *See Mendez v. Puerto Rican Int'l Companies, Inc.*, 553 F.3d 709, 715 (3d Cir. 2009) ("in order for a party to be the subject of a mandatory stay pending arbitration under Section 3 of the FAA, that party must have committed itself to arbitrate one or more issues in suit."). The Court does, however, have discretion to control its docket and stay litigation pending the outcome of arbitration. *Id.* at 712 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, n. 23 (1983)). "[A] court may stay proceedings in the interest of efficiency where the issues in arbitration are related to (if not strictly dispositive of) the issues before the court. *Neal v. Asta Funding, Inc.*, No. 13-3438, 2014 WL 131770, at *5

7

(D.N.J. Jan. 6, 2014). Plaintiff's FMLA and NJFLA claims against both Artech and Verizon are based on the same set of facts. He alleges that "Defendants" misclassified and denied him benefits, "unlawfully tried to dissuade him from taking his entitled leave," retaliated against him, and "imposed an additional unanticipated level of anxiety" on him. Compl. ¶¶ 13, 28, 33, 35, 49, 50, 60, 63. When the arbitration and litigation involve overlapping issues, "it would be inadvisable to have these intertwined claims proceed simultaneously in court and in arbitration; such a procedure would be rife with opportunities for mutual interference, inconsistent rulings, and general procedural confusion." *Neal,* 2014 WL 131770, at *5; *see also Salerno Med. Assocs., LLP v. Riverside Med. Mgmt., LLC,* 542 F. Supp. 3d 268, 283 (D.N.J. 2021) (citing *Neal,* 2014 WL 131770, at *4). Given that the facts and claims here are inextricably intertwined, the Court will grant a discretionary stay as to the claims against Verizon pending resolution of the arbitration against Artech.

## III.  CONCLUSION

For the reasons noted above, Defendants' motion to compel arbitration is **denied** as to Verizon and **granted** as to Artech. Defendants' request to stay this action is **granted**.

WILLIAM J. MARTINI, U.S.D.J.

Date: June 5, 2025